IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
CIVIL ACTION NO. 2:07-CV-30-FL

| | |
|---|---|
| BETTY O. EASON, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Betty O. Eason ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB and SSI payments on 6 December 2004, alleging disability beginning 12 July 2004 due to pain in her right arm and numbness extending from her hips to her feet. (R. 49-53, 78, 195-98). Both disability claims were denied initially and upon reconsideration. (R. 38-39, 42-44, 199-212). A hearing before the Administrative Law Judge

("ALJ") was held on 4 October 2006, at which Claimant was represented by a non-attorney and a vocational expert ("VE") appeared and testified. (R. 224-43). On 3 November 2006, the ALJ issued a decision denying Claimant's claims. (R. 19-30). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 220-23), and submitted additional evidence as part of her request (R. 213-19). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on 8 June 2007. (R. 5-9). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g) (2007). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d

2

585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "[L]istings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform..past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) improper analysis of whether Claimant's impairments meet or equal one of the Listings; (2) imprope r RFC and credibility assessments; and (3) failure to rely upon vocational expert testimony in determining whether Claimant could perform other work in the economy. Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings at 17, 20, 22, 25. ("Pl.'s Mem.").

3

## FACTUAL HISTORY

### I.  ALJ's Findings

The ALJ's decision followed the above-described sequential evaluation process, concluding at step five that Claimant had the RFC to perform other work. As such, the ALJ found Claimant "not disabled" as defined in the Act.

At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 25, 29). Next, the ALJ determined Claimant had the following combination of severe impairments: (1) obesity, (2) degenerative changes in the knee (right knee worse than the left knee), (3) moderate osteoarthritis of the hips, and (4) chronic changes at the L5-S1 nerve root bilaterally. (R. 29). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), "including any of the musculoskeletal impairments contained under 1.00ff." (R. 25, 29).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] that requires carrying out simple instructions and making simple work-related decisions, involves no climbing of ropes, ladders or scaffolds and requires limited reaching. (R. 27, 29). The ALJ found no non-exertional postural, environmental or

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a); 416.967(a); SSR 96-9P, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. SSR 96-9P, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

4

mental limitations or restrictions which significantly compromise the range of unskilled sedentary occupations. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible based upon the medical evidence and Claimant's ability to maintain a household for herself and her twelve year-old daughter. (R. 26, 29). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a nurse's assistant. (R. 27, 29). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 28-30).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was forty-eight years old, living with her twelve year-old daughter and unemployed. (R. 228, 230). Claimant attained a twelfth grade education and has past work experience as a nursing assistant. (R. 228, 230, 233).

Claimant testified that she is unable to work due to pain associated with bilateral degenerative joint disease of the knees and sciatic nerve damage. (R. 228-29, 231, 238). Claimant explained that her knee pain is associated with her right knee and that she has received injections but that the injections have not alleviated her pain. (R. 231). Claimant stated further that her doctor, while acknowledging deterioration in both knees, advised against knee replacement surgery due to Claimant's young age. (R. 235). Claimant uses a cane authorized by her physician and lies down for up to three hours each day to relieve her knee pain. (R. 231, 236). Claimant also experiences numbness and pain extending from her right hip to her right

5

foot as a result of sciatic nerve damage. (R. 229, 238-39). Claimant takes Darvocet, Lyrica and Arthrotec for pain but experiences little relief. (R. 233, 236).

As a result of pain in her back, right leg and both knees, Claimant relies on a cane to stand and walk. (R. 237). Claimant can only sit for approximately twenty minutes. (R. 232, 236). Claimant stated further that she cannot stand for more than fifteen minutes (R.237) and is incapable of walking a block without stopping. (R. 233). Claimant performs virtually no daily activities as a result of limitations caused by pain and began relying on the assistance of a home health nurse in August 2006. (R. 234). In particular, a home health nurse dresses and bathes Claimant and performs all grocery shopping and household chores. (R. 231-32, 234). Prior to the assistance of a home health nurse, Claimant relied on assistance from her daughter and a neighbor. (R. 235, 238). Claimant spends her days sleeping and resting and at times, watching television. (R. 231-32, 237). Claimant does not own an automobile and does not drive. (R. 232). Claimant cannot lift more than a half-gallon of milk. (R. 232-33).

## III.    Vocational Expert's Testimony at the Administrative Hearing

Robert D. Edwards, M.S., Vocational Rehabilitation Counseling, testified as a VE at the administrative hearing only with respect to Claimant's past work experience. (R. 100-01, 240-42). In particular, the VE described Claimant's position as a nursing assistant as medium, unskilled work. (R. 241). The VE testified further that Claimant's past relevant work did not provide Claimant with skills transferable to the semi-skilled/skilled functions of sedentary work. (R. 242). The ALJ did not pose a hypothetical to the VE.

6

## DISCUSSION

## I. The additional evidence submitted to the Appeals Council does not warrant remand.

Claimant contends the following additional evidence submitted to and reviewed by the Appeals Council constitutes substantial evidence and thus warrants remand: (1) a letter dated 20 March 2007 to the Appeals Council outlining Claimant's appeal and additional evidence (R. 220-23); (2) an office note from orthopaedist Aaron Marlow, M.D. dated 12 December 2006 (a) acknowledging the referral by orthopaedist Barbaro Perez, M.D., (b) advising of knee replacement and (c) observing Claimant's limited ambulation (R. 213); (3) a letter from Dr. Marlow's physician assistant dated 23 February 2007 to Rayette Jones, M.D., Claimant's primary care physician, recommending total knee replacements (R. 218-19); and (4) a questionnaire completed by Dr. Marlow dated 9 March 2007 noting, *inter alia*, ambulation difficulties (R. 214-17).[2] Although the Appeals Council discounted the additional evidence, it specifically incorporated it into Claimant's administrative record. (R. 6, 9). As such, this Court is obliged to review the additional evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings").

_____

[2] Based on the Appeals Court decision, it appears Claimant also submitted medical records from Dr. Perez dated 12 February 2006 through 20 September 2006. However, the Appeals Council characterized this evidence as "duplicative of information provided in Exhibit 11F which was included in the record at the hearing...." (R. 6).

7

The Appeals Council must consider additional evidence if (1) the evidence is new; i.e., not duplicative or cumulative of that which is already in the record; (2) the evidence is material; i.e., there exists a reasonable possibility that the new evidence would have changed the outcome; and (3) the evidence "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also Wilkins*, 953 F.2d at 96 (citations omitted). The fact that the additional evidence may have been generated after the ALJ's decision will not automatically disqualify it from consideration. The claimant must do more than simply submit medical records which postdate the hearing since the subsequently-generated records, standing alone, are insufficient to satisfy the materiality requirement. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). In particular, the claimant must show how the new evidence relates to the claimant's medical condition as it was at the time of the hearing. *Id; see also Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990) (explaining medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision). However, if the new evidence shows merely that the claimant's condition deteriorated after the administrative hearing, the evidence is not relevant to the claimant's condition as it was during the time at issue. *See Rhodes v. Barnhart*, 2005 U.S. Dist. LEXIS 42876, at *33-34 (W.D.N.C. Mar. 30, 2005), *aff'd*, 176 Fed. Appx. 419 (4th Cir. Apr. 20, 2006) (new evidence must relate to the time period for which benefits were denied and may not merely be evidence of a later-acquired disability or of subsequent deterioration of the previously non-disabling condition) (citing *Raglin v. Massanari*, 39 Fed. Appx. 777, 779 (3d Cir. 2002)).

In this case, the parties disagree as to whether the additional evidence relates to the relevant time period - 2 July 2004 (Claimant's alleged disability onset date) to 3 November 2006

8

(the date of the ALJ's decision). (R. 22, 30). Claimant explains that her possible candidacy for knee replacement was first mentioned by Dr. Perez in October 2005; however, Dr. Perez wished to delay such surgery as long as possible given Claimant's young age. *See* Pl.'s Resp. to Def.'s Mot. for J. on the Pleadings at 2-3 ("Pl.'s Resp."); (R. 167). By August 2006, Claimant's knee impairment had deteriorated to the point that Claimant's primary care physician recommended a personal care aide. *See* Pl.'s Resp. at 3; (R. 153-56). Claimant explains further that Dr. Perez' referral to Dr. Marlow, the exact date of which is unknown, "is overwhelmingly strong evidence of how advanced [Dr. Perez] felt [Claimant's] condition was during the relevant time period." Pl.'s Resp. at 3; (R. 213). Claimant contends, therefore, that Dr. Marlow's initial examination is material given that it occurred pursuant to Dr. Perez' request and only one month after the ALJ's decision. *See* Pl.'s Resp. at 2-3. Claimant argues further that the remaining additional evidence is material given that it is based on Dr. Marlow's initial examination. *Id.* Defendant, on the other hand, contests the materiality of the additional evidence, and in particular, the questionnaire completed by Dr. Marlow. *See* Mem. in Supp. of Comm'r Mot. for J. Pleadings at 11 n.5 ("Comm'r Mem."). Specifically, Defendant contends the questionnaire does not relate to Claimant's condition during the time period for which benefits were denied and that Dr. Marlow's limited treatment of Claimant minimizes its import. *Id.*

This Court finds that Claimant has failed to demonstrate that the additional evidence which she seeks to have considered relates to the time period on or before the ALJ's decision. Dr. Marlow's December 2006 progress note contains no indication that Claimant's endstage arthritis (Dr. Marlow's assessment upon physical examination) existed on or before the ALJ's opinion. (R. 213). While noting the existence of x-rays confirming his assessment of endstage

9

arthritis, Dr. Marlow does not indicate whether the x-rays reviewed were ones taken pursuant to the September 2006 request of Dr. Perez or if they were taken during Claimant's December 2006 examination. (R. 159, 213). Moreover, the record contains no knee x-rays post-dating August 2006. This Court is unable to discern whether Dr. Marlow relied on evidence in existence during the relevant time period reflecting Claimant's condition at that time. Similarly, no information is provided in the February 2007 letter or March 2007 questionnaire indicating whether the limitations discussed therein existed on or before the date of the ALJ's decision. While the additional evidence proffered by Claimant may indicate a degeneration of Claimant's condition, such evidence is not relevant to the present claim for benefits. *See Rhodes*, 2005 U.S. Dist. LEXIS 42876, at *33. Accordingly, the additional evidence cannot change the outcome in this case, and thus is not material. *Id.*

## II. The ALJ properly considered whether Claimant's impairments meet or equal a Listing.

Claimant argues that her impairments are severe enough to meet or equal the requirements of Listing 1.02 (major dysfunction of a joint), and in particular Listing 1.02A, and she contends further that the ALJ failed to adequately explain his reasoning for determining otherwise. Pl.'s Mem. at 16. This Court disagrees.

To be disabled under the Listings, the claimant may present evidence either that the impairment meets or is "medically equivalent" to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); *see also* 20 C.F.R. §§ 404.1526, 416.926. An impairment meets a listing if it satisfies all the specified medical criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (explaining "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify"). Even if an impairment does not meet the criteria of a

10

Listing, it can medically equal the criteria of a Listing. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria).

In making his step-three finding, the ALJ concluded the medical evidence did not support a finding that Claimant's condition met or equaled the criteria of a Listing, "including any of the musculoskeletal impairments contained under section 1.00ff." (R. 25). Listing 1.02A requires (1) chronic joint pain and stiffness, (2) signs of limitation of motion or other abnormal motion of the affected joint(s), (3) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint(s) and (4) involvement of one major peripheral weight-bearing joint resulting in an extreme limitation of the ability to ambulate. 20 C.F.R. § 404, Subpt. P., App. 1, §§ 1.02A, 1.00B.2.b(1). This Court finds substantial evidence exists to support the ALJ's finding that Claimant has not met or equaled this Listing. The Court finds further that the ALJ conducted the necessary Listing analysis by documenting evidence of criteria, or the lack thereof, for Listing 1.02A throughout his decision.

As for the first three criteria for Listing 1.02A, the ALJ noted the following: (1) Claimant's chronic knee pain as a result of degenerative disc disease and complaints of stiffness (R. 26, 166); (2) improvement in Claimant's range of motion upon receiving numerous injections (R. 26, 162, 165-66); and (3) Dr. Perez's finding, confirmed by a 12 October 2005 x-ray, that Claimant has severe osteoarthritis with valgus malalignment, the right knee worse than the left knee (R. 26, 167). However, the medical records do not indicate that Claimant suffers from ineffective ambulation, defined as "an *extreme* limitation of the ability to walk." 20 C.F.R. §

11

404, Subpt. P., App. 1, §1.00B.2.b(1) (emphasis added). Ineffective ambulation is evidence of an inability to "sustain[] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id.* § 1.00B.2.b(2).

Evidence as to Claimant's ambulation includes (1) a notation by Dr. Perez dated 9 November 2005 wherein Claimant indicated she had been walking and exercising (R. 26, 166); (2) the prescription of a cane by Dr. Perez on 9 November 2005 (R. 166); (3) Dr. Perez' 14 June 2006 notation that Claimant reported "significant difficulty getting around" (R. 163); and (4) Dr. Perez' 20 September 2006 notation that, following injections, Claimant reported "some difficulty getting around." (R. 159). While this evidence indicates some difficulty with ambulating, it does not suggest an extreme inability to walk. Moreover, the medical evidence does not include, for example, an inability (1) to walk without the use of two canes; (2) to walk a block at a reasonable pace on rough or uneven surfaces; or (3) to climb a few steps at a reasonable pace with the use of a single hand rail. 20 C.F.R. § 404, Subpt. P., App. 1, § 1.00B.2.b(2).

The Court acknowledges the notation by Dr. Jones on a Personal Care Services ("PCS") report dated 14 August 2006 (wherein Dr. Jones recommended that Claimant have a personal care aide) that Claimant is to use either a cane or walker when ambulating and requires "limited assistance"[3] in performing activities of daily living, such as shopping and taking out garbage due to generalized weakness. (R. 154). While the regulations cite the use of a walker as evidence of ineffective ambulation, *see* 20 C.F.R. § 404, Subpt. P., App. 1, § 1.00B.2.b(2), the only indication of the need for a walker is the PCS report. (R. 154). However, Dr. Jones' progress

---

[3] The PCS form defines limited assistance as follows: "Individual highly involved in activity receives hands-on help in guided maneuvering of limbs with eating, toileting, bathing, dressing, personal hygiene, self monitoring of meds and/or other non-weight bearing assistance." (R. 154).

12

notes do not support this need. For example, on 25 April 2005, Dr. Jones treated Claimant for right leg numbness and pain, both of which are alleviated by sitting. (R. 133). Dr. Jones also noted that Claimant requested a note indicating she was unable to work; however, Dr. Jones refused given "no significant findings on exam." (R. 26, 133). One month later, Dr. Jones indicated that despite Claimant's subjective complaints of leg and hand pain and Claimant's statement that she can barely walk as a result of knee pain, Claimant's complaints were not consistent with examination findings. (R. 181). On 23 August 2005, Claimant again complained of joint pain; however, all labs were within normal limits. (R. 180). The remaining visits to Dr. Jones, 31 May 2006 and 19 September 2006, were for treatment of a sore throat and cold, respectively. (R. 178-79). Dr. Jones noted on both occasions that Claimant was seeing an orthopaedist for her knee pain. *Id.*

For the reasons state above, this Court rejects Claimant's challenge to the ALJ's finding that her impairments do not meet or equal listing 1.02A and the ALJ's analysis thereof.

**III.   The ALJ properly evaluated the credibility of Claimant's statements.**

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 22-25. This Court disagrees.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be

13

believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. SSR 96-7p, 1996 WL 374186, at *4; *see Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

   (1)   effect of symptoms on claimant's daily activities
   (2)   location, duration, frequency and intensity of the symptom(s)
   (3)   factors that precipitate or aggravate claimant's symptoms
   (4)   type, dosage, effectiveness and side effects of medication taken to
         alleviate the symptom(s)
   (5)   non-medical treatment received for relief of the symptom(s)
   (6)   any non-treatment measures used to relieve the symptom(s)
   (7)   other factors concerning functional limitations and restrictions due to the
         symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding

14

credibility should be given great weight). Regarding objective evidence, the ALJ summarized Claimant's medical records as to each impairment and noted the modest findings on diagnostic testing. (R. 25-26, 167, 170-71, 190, 194); *see Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) ("Sufficient consideration of the combined effects of a [claimant's] impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a [claimant's] complaints of pain and level of daily activities." (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006) (unpublished per curiam). The ALJ noted Claimant's physicians indicated Claimant's complaints were out of proportion to their findings upon physical examination of Claimant (R. 181, 190), which revealed the following: (1) normal range of motion in most joints (R. 26, 130, 132-33, 159–60, 162-64, 190); (2) mild weakness in her lower extremities (R. 26, 157-58); and (3) negative straight leg raising (R. 26, 157, 185-88, 190).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) as referenced above. *See* SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's ability to maintain a household for herself and her 12 year-old daughter and Claimant's reliance on a home health aide beginning August 2006; (2) Claimant's right leg pain and numbness, right arm pain, knee stiffness and pain and hip pain; (3) Claimant's weight increase and the fact that excessive weight can exacerbate low back, hip and knee pain and Claimant's testimony that her pain is alleviated somewhat when sitting but

15

increases with standing and walking; (4) the lack of strong pain medication and Claimant's report of improvement with treatment such as injections and medication; and (5) Claimant's conservative treatment and her consistent decline of other modes of treatment, such as physical therapy, nerve block injections and surgery. (R. 25-26).

As to the ALJ's finding regarding other modes of treatment, Claimant argues that she has undergone significant treatment and in particular, knee treatment. *See* Pl.'s Mem. at 23. In support of this argument, Claimant points out the following: (1) Dr. Perez' preference for conservative treatment given Claimant's young age (R. 163-64, 167); (2) Claimant's consent to steroid and Synvisc injections (R. 160-62, 165); and (3) Dr. Perez' 9 November 2005 notation that Claimant's insurance does not cover physical therapy and Claimant cannot afford it (R. 166). *Id.* With respect to the first two contentions, the ALJ acknowledged Claimant's "conservative treatment with some reports of positive results" but did not mention explicitly Dr. Perez' reluctance in advising knee surgery and the reason therefor. (R. 26). However, the ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517. Here, the ALJ's summary of Claimant's

16

medical record "enable[s]...[this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1211. Further, to the extent Claimant was offered surgery, and declined, the ALJ may consider such refusal. *See* 20 C.F.R. §§ 404.1530(b), 416.930(b) (noting disability benefits are unavailable to a claimant who does not follow the prescribed treatment). On 20 September 2006, Dr. Perez acknowledged total knee replacement is in Claimant's future; however, he would continue to treat Claimant in a conservative fashion given her wish to "hold off on any surgical intervention." (R. 159). Accordingly, the ALJ properly noted Claimant's decision to decline surgery.

As for the ALJ's reliance on other modes of treatment, "trials of a variety of treatment modalities...generally lend support to an individual's allegations of intense and persistence symptoms." SSR 96-7p, 1996 WL 374186, at *7. However, the ALJ must not draw any inferences from the lack of such treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain...failure to seek [alternative] treatment. *Id.* The inability to afford medical treatment is a sufficient reason for not pursuing treatment. SSR 96-7p, 1996 WL 374186, at *8.

In this case, the ALJ, while noting Claimant was walking for exercise and having some problems with stiffness per Dr. Perez' November 2006 progress report, did not mention Dr. Perez' notation as to Claimant's inability to afford physical therapy regarding her knees. (R. 26). To the extent the ALJ relied on Claimant's lack of physical therapy in discrediting Claimant's statements regarding knee pain, such reliance is misplaced. *See Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding it was improper to consider a disability claimant's failure to seek treatment in determining whether an impairment was severe when the failure was justified

17

by lack of funds). However, the ALJ properly relied on Claimant's refusal of nerve block injections as suggested upon numerous occasions by Nickolas Pezzella, M.D., Claimant's treating spine physician, as no statement appears in Dr. Pezzella's progress notes regarding an inability to afford such injections. (R. 157-58, 185-88).

The ALJ considered Claimant's alleged symptoms to the extent they were credible. Specifically, the ALJ found Claimant's obesity and degenerative joint disease limited her to sedentary work despite state agency physical RFC assessments indicating Claimant could perform medium work. (R. 27, 135, 143). In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## IV. The ALJ properly assessed Claimant's RFC.

Claimant contends the ALJ failed to accurately describe Claimant's RFC. Pl.'s Mem. at 20. This Court disagrees.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§

18

404.1545(a)(4); 416.945(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

The ALJ gave due consideration to Claimant's testimony, but did not find it was fully consistent with the medical evidence. As discussed above, the ALJ's opinion provides a review of the medical findings by numerous physicians, none of which supports Claimant's assertion that she is incapable of working. (R. 25-26). The ALJ's assessment also includes statements by Claimant found to be credible. (R. 27); *see Hines*, 453 F.3d at 565 (noting that the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). While two state agency consultants found Claimant had the RFC to perform medium work (R. 135, 143), the ALJ, taking into account Claimant's obesity and degenerative joint disease, only found Claimant capable of performing sedentary work. (R. 27). This finding is in accord with Claimant's consistent reports that her pain decreases with sitting but increases with standing and walking. (R. 26, 128, 133). Finally, the ALJ noted that Nickolas Pezzella, M.D., Claimant's treating spine specialist, encouraged Claimant to remain active. (R. 26, 186-87).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

19

## V. The ALJ did not err in relying on the Grids.

Finally, Claimant argues the ALJ erred by relying solely on the Grids and by failing to call a VE to testify as to the impact of Claimant's nonexertional limitations and her use of a cane on the unskilled, sedentary occupational base. Pl.'s Mem. at 26-27. This Court disagrees.

Once a claimant successfully demonstrates that she cannot perform her past relevant work, the burden shifts to the Commissioner to show that the claimant, based on her age, education, work experience and RFC, can perform other substantial gainful work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Pass*, 65 F.3d at 1203. The ALJ may carry this burden through the use of the Grids if a claimant has no nonexertional impairments that prevent her from performing the full range of work at a given exertional level. *Coffman*, 829 F.2d at 518; *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). However, an ALJ may not rely exclusively upon the Grids in cases involving two types of claimants: those who suffer a disability present in the absence of physical exertion and those who suffer in exertion a disability that restricts their ability to perform a full range of work at a given exertional level. *Hammond*, 765 F.2d at 425-26. In both such cases, an ALJ must go beyond the Grids and "produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant." *Id.* at 426; *see Gory*, 712 F. 2d at 931 ("If only nonexertional limitations are claimed, the [Grids] do not direct a conclusion of either disability or non-disability."); *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983) ("where the claimant's impairment is nonexertional...the grids' Rules are not conclusive, and full individualized consideration must be given to all relevant facts of the case.").

20

However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the Grids. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). Rather, "the proper inquiry...is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which [s]he is exertionally capable." *Id.*; *see also Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984) ("If a nonexertional condition reduces an individual's residual functional capacity to perform sedentary work, it is inappropriate to apply the [G]rids because the range of jobs available to the impaired claimant is narrower than the [G]rids would indicate."). When a claimant has a combination of nonexertional and exertional limitations and it is clear that the nonexertional limitations will have little effect upon the exertional occupational base, the finding directed by the Grids is sufficient and VE testimony is unnecessary. SSR 83-14, 1983 WL 31254, at *6; *see Smith*, 719 F.2d at 725 (holding reliance on the Grids is precluded only if the nonexertional condition affects claimant's RFC to perform work of which she is exertionally capable); *see also Rogers v. Barnhart*, 207 F. Supp. 2d 885, 896 (W.D.N.C. 2002) (noting the ALJ was not obligated to employ a VE because claimant's nonexertional impairments did not rise to a level which prevented a wide range of activity at the sedentary level).

In this case, Claimant contends her reliance upon a cane while standing or walking, combined with her concentration and reaching limitations, constitute a significant combination of exertional and nonexertional limitations warranting testimony by a VE. *See* Pl.'s Mem. at 26. Claimant contends further that her cane is "medically necessary" as evidenced by the 9 November 2005 prescription for a cane by Dr. Perez (R. 166) and Dr. Jones' 14 August 2006 notation on the PCS form that Claimant is to use a cane or walker while ambulating. *See* Pl.'s

21

Resp. at 5; (R. 154). Social Security Ruling 96-9p requires, *inter alia*, consideration of the impact of medically-required hand-held assistive devices on the unskilled sedentary occupational base. SSR 96-9p, 1996 WL 374185, at *7. However, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, *and describing the circumstances for which it is needed* (e.g., whether all the time, periodically or only in certain situations...)." SSR 96-9p, 1996 WL 374185, at *7 (emphasis added). In this case, while Dr. Perez prescribed the use of a cane,[4] no record describes the circumstances for which the cane is needed.

If an assistive device "is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded" as sedentary unskilled occupations require minimal lifting and carrying. SSR 96-9p, 1996 WL 374185, at *7. In contrast, if the device is required for "balancing because of significant involvement of both lower extremities," the sedentary occupational based "may be significantly eroded;" thereby requiring the testimony by a VE. *Id.* A review of the medical records reveals Claimant's level of mobility is not impacted to a degree that Claimant's use of a cane is required at all times. In fact, despite Claimant's lower back and knee complaints, Claimant was encouraged to remain active. (R. 26, 186-87). The evidence submitted by Claimant is therefore insufficient to support a finding that her cane was medically necessary.

---

[4] Defendant contends Claimant's use of a cane is not medically-necessary as no records support Claimant's testimony that Dr. Perez prescribed a cane. *See* Mem. in Supp. of Comm'r Mot. for J. on the Pleadings at 14 ("Comm'r Mot.").

As for Claimant's concentration limitations, the ALJ found Claimant capable of understanding, remembering and carrying out simple instructions and making simple work-related decisions (R. 27, 29) - mental activities required by unskilled work. *See* SSR 85-15, 1985 WL 56857, at *4 (mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions); *accord* SSR 96-9p, 1996 WL 374185, at *9 (mental activities required by unskilled work include understanding, remembering, and carrying out simple instructions and making simple work- related decisions); *see also Nixon v. Barnhart*, 2006 WL 1554673, at *6 (D. Me. June 1, 2006) (describing ALJ's decision that a limitation to simple, routine tasks had little impact on the occupational base as "self-evident"). Finally, while the ALJ acknowledged that Claimant's reaching ability is "somewhat limited," he found it was "by no means significantly restricted." (R. 28).

Based on the mental activities required by unskilled work, Claimant's "somewhat limited" reaching ability, and the lack of evidence suggesting Claimant's use of a cane was required at all times, the ALJ properly concluded Claimant's impairments would not prevent her from performing all the work activities she is otherwise exertionally capable of performing. As such, the finding directed by the Grids is proper and testimony from a VE was not required.

## CONCLUSION

For the reasons stated above, this Court recommends Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be upheld.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to

23

file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 18th day of July, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge

Case 2:07-cv-00030-FL   Document 23   Filed 07/18/08   Page 24 of 24